WASHINGTON,
   *March*,
   1829.

JONATHAN M. BATCHELDER *vs*. ALVAN CARTER.

That possession of personal property must accompany and follow the sale, or the sale will not be valid against creditors.

Not so of a Sheriff's sale on execution, where all is in good faith.

That an auction-sale by a Sheriff, made by agreement of the parties interested, and without any previous advertisement, and not under any legal precept warranting the sale, is not a Sheriff's sale within the above exception.

This was an action of *trespass* for taking and carrying away two gelding horses, a double sleigh and harness, alleged to be the property of the plaintiff. On the trial in the County Court, on the general issue, the plaintiff proved by one *John W. Batchelder*, that in December, 1827, and for a long time before, one *Nathaniel Batchelder*, owned and had in his possession, the property in question—That in the same December, while said horses, sleigh and harness were so owned, and in the possession of said *N. Batchelder*, they, with some other personal property, were attached by *Center Lamb* on *mesne process*, as the property of the said *Nathaniel*, in a suit in favor of one *Ira Batchelder* on a note assigned to *Center Lamb, & Co.* to pay a debt due form *Ira Batchelder* to them—that the said *Lamb*, who was to have the avails of said suit if any thing was collected, agreed with the plaintiff in this suit, witness and *N. Batchelder*, that if the debt on which the property was attached was secured to him, the property might be sold— That the present plaintiff told the said *Lamb*, if he would permit the property attached to be sold, he would get or give him a good note for the amount of the debt—That the property was accordingly sold at vendue by the sheriff who attached it, and had it in custody, at the request of the present plaintiff, witness and *N. Batchelder*, and by the consent of the said *Lamb* who was present ; but no advertisement or notice of the sale had been posted up. All the property sold brought about $130 00.—That this plaintiff bid off all the property mentioned in his declaration for about $87. —That the plaintiff and witness then singned a note to the said *Lamb* for something like $170 00. Witness further testified that at the time of sale he hired the horses and sleigh of the plaintiff to go to *Boston*, plaintiff saying to witness he must take good care of the horses, for he did'nt know but that he might want to use them, after witness returned—That *N. Batchelder*, witness' father, harnessed the horses into the sleigh, drove them with a load of pork to plaintiff's residence, and then drove the horses and sleigh home to his own house ; and witness unharnessed them, and put them into the barn owned by *N. Batchelder*, and where they had always been kept previous to their being attached—That they had been out of *N. Batchelder's* possession, while so attach-

ed, about a week—That the horses, after they were bid off by the plaintiff and brought back to *N. Batchelder's* barn, were fed as formerly, and remained in said barn three or four days, when they were attached by the defendant on a writ in favor of *Ira Day*, as the property of *N. Batchelder*, and taken from said farm with the sleigh and harness—That witness had been of age about three months when the attachment was made, and lived with his father, *N. Batchelder*, and was a single man. The plaintiff here rested his cause.

The defendant proved by *Center Lamb* that after the attachment of the property on the suit in favor of *Ira Batchelder*, *N. Batchelder* frequently applied to witness to settle the debt, and get the property released from the attachment. Said *N. Batchelder* told witness he would get some one to secure the debt if he would release the property. Witness told *N. Batchelder* he would give up the property, or consent to have it sold, if his debt was secured, but would not release the property or have it sold till the whole debt was secured. Plaintiff in this suit afterwards told witness that he would get or give him a good note for the debt, even if the property did not sell for half enough to pay the debt, if witness would release or consent to have the property sold. On these conditions the property was sold—That *N. Batchelder* and *John W. Batchelder* paid the officer for selling the property ; but no advertisement, or notice of the sale, was posted up ; and no judgment had been recovered in the suit in favor of *Ira Batchelder* on which the property was attached—The defendant further proved by *Ephraim Kinney* that he was present at the sale of the property in question, and that the plaintiff who bid off the property requested *N. Batchelder* to take the horses and sleigh and drive them with a load of pork, which had been attached on the *Ira Batchelder debt*, to his, the plaintiff's, house—That the plaintiff was present when *N. Batchelder* got on the sleigh and drove off.

The defendant then contended,

1. That if the Court should be of opinion that the sale of the property in question to the plaintiff was of the same validity as though regularly made at a Sheriff's sale on an execution in due course of law, still the possession of the property should follow and accompany the sale ; and the plaintiff permitting *N. Batchelder* to take the property into his possession and drive it home, he being the original owner, rendered the sale fraudulent and void in law as against *bona fide* attaching creditors of *Nathaniel Batchelder* ; and requested the Court so to charge the jury.

2. That the sale, although made by the consent of the plaintiff

Washington,
March,
1829.

Batchelder
vs.
Carter

W

Washington,
March,
1829.

Batchelder
vs.
Carter.

and *Nathaniel Batchelder* and *Center Lamb*, had not the validity of a Sheriff's sale on an execution, and was in law nothing more than a private sale made by *N. Batchelder* to the plaintiff; that the possession of the property ought to have followed the sale, and that the plaintiff suffering *Nathaniel Batchelder* to take the property into his possession and drive it home, and there retain it in his possession, rendered the sale fraudulent and void in law as against *bona fide* attaching creditors; and the defendant so requested the Court to charge the jury.

3. The defendant further contended that in all cases of private sale of personal property, the possession must follow and accompany the sale, and the possession of the vendee must be entire and exclusive of the vendor, and that if the jury found that the sale in the present case was a private sale, yet if the plaintiff permitted *Nathaniel Batchelder* to take the property into his possession, and drive it home, and it there remained in the possession of *N. Batchelder* as before the sale, though at the request of *John W. Batchelder*, yet *John W. Batchelder* being a son of *Nathaniel Batchelder*, just come of age, and living with his father, rendered the possession of *Nathaniel, Batchelder*, the vendor, a joint or concurrent possession with the plaintiff, the vendee, and was not such a change of possession as the law required, and made the sale fraudulent and void in law as against *bona fide* attaching creditors of *N. Batchelder*; and so requested the Court to charge the jury.

But the Court neglected to charge the jury on the third and last point, and also to charge as requested by defendant on the first and second points; but did among other things charge them—That when property is sold at a Sheriff's sale on an execution, it is not necessary that possession should accompany and follow the sale in order to render the sale valid against attaching creditors of the debtor; that if the jury found, in the present case, that the property in question was sold in satisfaction of the creditor's debt, at vendue, by the Sheriff on the writ, by the consent of *Lamb & Co.* the creditors, and *Nathaniel Batchelder*, the debtor, to save the expense of keeping it, and the sale was matter of notoriety, it was not necessary that possession should follow and accompany the sale; and that if there was no fraud in fact in the transaction, but the sale was *bona fide*, and without any intent to secure the property to *Nathaniel Batchelder*, or evade the rights of his creditors, though the property was in his possession when attached by the defendant, yet the sale was a good and valid one as against the creditors of *N. Batchelder*, and the plaintiff had a right to recover. The jury accordingly returned a verdict for the

plaintiff for $93 08 damages. The defendant excepted to the charge, and moved for a new trial.

WASHINGTON,
*March,*
1829.

Batchelder
*vs.*
Carter.

*Smith and Peck, for defendant,* contended—That it was now well settled that the want of a change of possession of personal property does *per se* render the sale fraudulent and void as against the creditors of the vendor ; and cited a number of authorities, among which, 1 *Aikens'* 116.—2 *id.* 64.—That the sale of property by the Sheriff on execution was an exception to this general rule. But,

That the sale in the present case did, not come within the exception, it not having been made on an execution, nor by any legal authority.

*Mr. Upham, for the plaintiff,* cited *Kidd* vs. *Rawlinson,* 2 *Bos. & Pull.* 58.—*Watkins* vs. *Birch,* 4 *Taunt.* 822.—*Cadogan* vs. *Kennet, Cowp.* 432, which authorities show that when property is sold by the Sheriff on execution, possession need not follow and accompany the sale. He also cited the following authorities to show, that the sale in question did not differ in principle from a sale on execution. *Leonard* vs. *Baker,* 1 *Maule & Selwin,* 251.—*Latimer* vs. *Batson,* 4 *Barn. & Cres.* 652.—*(*10 *Com. Law. Rep.* 432.*)*—*Jezeph* vs. *Ingram,* 8 *Taunt.* 838.—*(*4 *Com. L. Rep.* 303.*)*

HUTCHINSON, J. delivered the opinion of the Court. The principal question in this case is, whether the possession of the property in controversy was sufficiently changed, from *Nathaniel Batchelder* to the plaintiff, to vest the same, and render the sale complete as against the creditors of *Nathaniel Batchelder ?* It is scarcely contended by the plaintiff's counsel that here was a sufficient change of possession according to various decisions of this Court, unless this should be considered a Sheriff's sale, like that named in *Kidd* vs. *Rawlinson,* cited by the plaintiff's counsel, and *Boardman* vs. *Keeler,* reported by *Aikens.* Indeed, there seems to be no change of possession whatever. The same day that the plaintiff bid off the property, *N. Batchelder,* the former owner, carried, with the sleigh and horses, a load of pork to the plaintiff's house, went home with them, and they were kept at his barn, upon his hay, as before they were attached. Nor was the possession varied by what appears to have been said or agreed about *J. W. Batchelder's* having them to perform a journey to *Boston ;* for he as yet had no possession or care of them. Was this, then, a Sheriff's sale ? *Carter,* the defendant, as a deputy sheriff, had attached the same property upon a writ in favor of *Ira*

Washington,
March,
1829.

Batchelder
vs.
Curtis.

*Batchelder* against *N. Batchelder,* upon a note owned by *Center Lamb & Co. Carter* had kept the property about a week, when, by the mutual agreement of *Lamb, N. Batchelder,* the plaintiff, and *J. W. Batchelder,* the property was sold at auction, without any previous advertising. *Carter* acted as auctioneer; the plaintiff bid off the property in question; and probably *J. W. Batchelder* bid off the remainder; for he and the plaintiff gave to *Lamb* their note for his whole debt, being about $170.

The majority of us cannot view this as a Sheriff's sale. *Carter* was Sheriff, to be sure, and had, for a week, kept the property in his custody under a writ; but that writ authorised no sale, nor was there a pretence of a sale under it. *Carter* derived all his power to sell from the agreement of the parties; and any other person might as well have been agreed upon as he. And no precept whatever could have authorised so sudden a sale, without the agreement of parties, and such agreement would answer as well without a precept as with. A Sheriff's sale, such as was intended in the case of *Boardman* vs. *Keeler,* supposes a judgment establishing a debt due; an execution upon that judgment; that delivered to an officer under oath to be faithful and impartial; a levy upon property by such officer; advertising the same for sale at least fourteen days, naming some public place for the sale; an exposure of the property at public auction by such officer at the time and place thus advertised, so that not only the debtor himself and that particular creditor, but all the creditors of the same debtor, may attend and bid upon the property, and prevent a waste for want of bidders; and, in the end, an official return of the sale by such officer upon such execution, to the office whence it issued, where it may be seen by any person who may desire to see it. No feature of all this proceeding is apparent in the sale now under consideration. This may have been in some sense public, but yet it must have been casually so if at all; and was strictly under the private authority delegated to *Carter* by the parties immediately in interest; he at the same time acting without precept and without oath.

The authorities cited by the plaintiff's counsel upon this point do not seem entirely parallel with this case. The case of *Leonard* vs. *Baker,* in 1 *Maule* & *Selwin* 251, was this: The owner, one *Clee,* on the 17th of January made an assignment of all his property to certain trustees for the benefit of his creditors. The trustees advertised regularly, and sold the property on the 12th of February. The plaintiff at such sale bought the household furniture, moved some of it home, and left the rest with his mother for her accommodation. Afterwards the plaintiff hired the house of the

landlord, and took possession of the same with the furniture. Af-
ter all this *Collins* attached the goods as the property of *Clee*
who had absconded. The plaintiff's mother, who was *Clee's* wife,
had used the furniture to entertain lodgers as formerly ; but, after
the plaintiff had hired the house and taken possession, *Collins*
was informed that the plaintiff was the owner. The plaintiff re-
covered. As the plaintiff had actual possession before *Collins'*
attachment, the controversy could not have been about fraud in
law, but fraud in fact.

The case of *Latimer* vs. *Batson*, 10 *Com. Law Rep.* 432,
was actually a Sheriff's sale. The Sheriff levied upon the prop-
erty of the *Duke* of *Marlborough*, by virtue of an execution
against him. The creditor became the purchaser, and sold to the
plaintiff, who put a man in to take care of the property while the
*Duke* used it. On trial the question of possession was consider-
ed settled by the sale's being by the Sheriff on execution ; and
the only question left to the jury was, whether the sale was *bona
fide*, or the purchase made with the money of the *Duke?*

Another case is cited, *Jezeph* vs. *Ingram*, 4 *Com. Law Rep.*
303. The observations of the Court rather favor the present
plaintiff. They grant a new trial, but do not give the best rea-
son for it the facts in the case would warrant. The plaintiff sued
*Ingham* as sheriff for a false return with regard to the goods,
&c. of *Newman* ; claiming that the goods once *Newman's*,
but then in possession of one *Dunk*, were still liable to be
taken and sold for *Newman's* debt. The fact was, a Sher-
iff pressed *Newman* with an execution, and *Dunk* stepped in and
paid the execution, and paid other debts of *Newman*, amounting
in all to four or five hundred pounds ; and took a conveyance of
*Newman's* house and farm, and all his personal property except
his household furniture ; and took possession and care of the same
under a contract that he should account, and first apply the profits
to pay the interest, and the rest to discharge principal. *Newman*
occupied a part of the house, and that furniture to which *Dunk*
had no claim. *Newman* did not further intermeddle except the
hiring some few laborers and referring them to *Dunk* who em-
ployed and paid them. The plaintiff claimed that the defendant
as Sheriff should have sold as *Newman's* property this personal
property in possession of *Dunk*. The plaintiff obtained a
verdict. The Court granted a new trial ; and, if they had assign-
ed as a reason that the property was in the possession of *Dunk*, not
of *Newman*, that might have been fully satisfactory without more.

We find nothing in these authorities to support the sale under
consideration without a more substantial change of possession than

WASHINGTON,
*March,*
1829.

Batchelder
*vs.*
Carter.

is made to appear. As the Court, in their instructions to the jury, treated this as a Sheriff's sale, and one that need not be followed by possession, a new trial must be granted.

There is another part of the charge that deserves a moment's attention. The request of the defendant's counsel to the Court is broad enough to comprise every proper instruction to the jury in the cause. And the Court sufficiently instructed the jury not to find for the plaintiff, if the sale to him of the property was not *bona fide:* yet, it appears to me the Court did not sufficiently call the attention of the jury to those parts of the testimony which were evidence of fraud in fact. As soon as *Lamb's lien* was taken off the property by the note of the plaintiff and *J. W. Batchelder,* *N. Batchelder* could convey to the plaintiff as good a title without the interference of the Sheriff as with. And it seems difficult to conjecture why they should agree upon the ceremony of what they called a Sheriff's sale, unless it were considered a mode in which property might be sold, and yet remain in the custody of the former owner, and be safe from the attachments of his creditors. And, if such a ceremony would answer that purpose, I presume it would be the usual manner of fraudulent conveyances. If the attention of the jury had been pointed to this circumstance, in connection with the fact, that no advertisement was posted up to give notice to other creditors to attend and bid, for the purpose of saving their debts, and the further fact that the possession remained as it was before the first attachment, I should deem it strange if the jury had not found the sale fraudulent in fact.

The majority of the Court reverse the judgment and grant a new trial.

N. B.—*Prentiss*, J. delivered a dissenting opinion, and *Turner,* J. an opinion in support of the judgment of reversal.

*Upham*, for plaintiff.

*Smith* and *Peck*, for defendant.